They proceed when you're ready Mr. Chief Judge and may it please the court here are some of the words that Conagra uses to describe the jurisprudence of the Arkansas Supreme Court in Gerber v. Hewitt. Flawed, mistaken, uninformed. This is how Conagra insults and besmirches binding Arkansas Supreme Court precedent. That's why this appeal is about the Erie Doctrine. Appellants are asking this court to follow J McDaniel Construction Company. You've never argued that the prior case was wrong or misguided? This is not the venue to do that so in federal court you wouldn't. That's the issue. I respectfully your honor I believe that under Erie and under this court's holding in J McDaniel the issue is whether or not when sitting in diversity jurisdiction a district court is at liberty to disregard the binding law of the state. Court even, or excuse me, counsel even under Erie there is an exception for this court following a perhaps it can be a case where there's very persuasive grounds for believing that the state's highest court no longer follows that precedent and in a situation where you have the state legislature take the action that was taken here to clarify what it meant by the law it had already passed it seems that this might be that kind of case where it's not likely that the Supreme Court would follow its precedent. I think the the answer to that question is is in FedEx Corporation versus Skelton where the Arkansas Supreme Court that said said that the legislature doesn't have the authority to retrospectively abrogate a judicial pronouncement and if you combine that principle... Well we're not I'm not saying it's necessarily abrogated a judicial pronouncement but it's clarified what its law means or what its statute means and once with that clarity it may be doubtful that if heard again the Supreme Court would reach the same interpretation. Certainly Act 914 is a window into the way that the legislature thinks about the decision that the Arkansas Supreme Court made. Tellingly when House Bill 1846 was proposed that which later became Act 914 it contained a specific provision which would have retroactively changed the the application of the provision that's relevant to this case whether 2030 which is not in AMWA can be read into the FLSA. They didn't actually change the law though did they? The statute itself was not amended was it? It is an amendment in the title it has said repeatedly like in pledger versus mid state construction that a later amendment does not control the interpretation of a statute enacted prior to the amendment and it can't a later amendment can't change the meaning of the original statute that was acquired prior to the amendment. The AMWA meaning was acquired in 2016 when the Arkansas Supreme Court authoritatively did it. Tellingly when House Bill 1846 was making its way through the legislature the provision that would have retroactively changed the law was stricken and instead section E was put in which said that prospectively from the date of passage or from the date of effectiveness the law would be read differently thereafter and we don't object to that that's the plain language of the statute that's fine. But you're saying the legislature cannot adopt a distinction between retroactive and clarification? I'm not saying that your honor. That's the issue isn't it? I mean there is a difference to me there is a substantive difference between retroactively changing the statute and changing it prospectively in a clarifying amendment in leaving to the Supreme Court whether it decides to modify its precedent accordingly. It may be a subtle difference but it's a real difference. Well the power of the legislature to clarify a law that's already been interpreted by the court certainly is diminished by the role that the courts play in interpreting what a law says. So wait wait power or effectiveness effect? Well I apologize I thought this I thought your question tended towards whether or not the legislature had the authority to clarify a statute. And they clearly do question is what's the effect of it? Yes and they have the authority to retroactively amend assuming it's not substance that you don't get in trouble into the prospectively amend and they have the power to clarify but the power the effect of clarification may be different in the courts than the effect of retroactive change. Not even ConAgra is asking this court to find that Act 914 was retroactive. No no no. ConAgra is asking this court to do something it has never done before which is to flout a direct controlling statement of Arkansas law by the Arkansas Supreme Court. But this case is. Which is the controlling statement the declaration it's it's clarifying or the failure to adopt the retroactive provision or something else? Gerber is the. You said the direct statement of the legislature that's what I'm so I'm following up on that. Okay the legislature's words are specifically in Section E. This act applies only to conduct occurring on or after the effective date hereof which would have been April 4th 2017. Under the plain meaning of the text of the statute the plaintiff wins. Now you can look at. But see you're not you're just refusing to consider a real nuance. Well I just don't. It's either prospective or it's retroactive. That's an up or down. Yes. But they can also declare it to be clarifying and prospective leaving to the court to sort out what impact that will have on the court's precedent. And Pledger versus Midstate. You can't deny they have the power to do it. We're arguing about the effect of attempting to do it. Yes and Pledger versus Midstate Construction Company an Arkansas Supreme Court case says that that amendment doesn't control the interpretation of the statute. Now by interpretation I understand that to mean clear a clarification when the meaning of the statute has already been decided by the Arkansas Supreme Court. This case is identical to Jay McDaniel in every respect that matters. So the district court. When a federal court sits in its eerie function is it limited in being able to discern the likelihood of a state court to change its mind when you have the kind of evidence that's present in this case that that seems to indicate there was a very direct strong purposeful statement by the legislature to the Supreme Court on a very closely divided decision indicating that in the future it should look at that law differently. Plaintiffs are not suggesting that this court should blindly follow Arkansas Supreme Court decisions but instead. That's why I was asking the question because I was starting to get that impression. No certainly other circuits not the 8th have gone and looked at other state Supreme Court authorities to see if the underlying decision was eroded in some way by the court not by a legislature. And so this court's answer to the question that you have posed is that we have no authority to speculate as as to how the Arkansas Supreme Court would rule if presented with the question again. You just said we have no power to do what Erie makes us do. Speculate. You can always plug the word speculate in to our frequent attempts to try to fathom what we think the state Supreme Court would do with a new or difficult issue. Respectfully your honor I think that when this court doesn't interpret the doesn't enforce the last clearest statement of a law such as Gerber this court looks at evidence not speculation but evidence from the Supreme Court that for some reason that that prior precedent that one of the parties is urging is no longer reliable. There's no what the dissents in those cases say. When we're looking at a state Supreme Court for instance the last decision and it's split and it's split sharply with strong dissent. Yes. Is that something we can take into account? No your honor. It's not the role of a court sitting in diversity to disregard the binding law. The dissent is not the binding law and therefore this court must go with the majority. It's not that the law could that Gerber could never ever be reversed by the Arkansas Supreme Court. It's that this court doesn't want to encourage form-shopping and erode confidence in the Arkansas Supreme Court's ability to interpret and role to interpret its own laws. I see that. Circling back to where the Chief Judge Smith started you have now declared there are no circumstances where Erie permits us to conclude that a state Supreme Court would would not follow it's what would otherwise be binding precedent. Not at all your honor. There are such circumstances. I mean you have to recognize you said cannot disregard binding law period. The situations in which a court sitting in diversity will not follow a state Supreme Court ruling are those when there are other indications from that state Supreme Court that the authority in question is no longer binding. It's no longer valid. I'm into my rebuttal and so I'll return. Thank you. Thank you Mr. Sanford. Mr. Glinius. Thank you your honors. May it please the court. The MWA issue in this case turns on the very questions this court has already raised. What would the Arkansas Supreme Court do if it were presented with this issue today? Would it be impacted by Act 914 the subsequent legislation? Would it be impacted by the section 218 that it was not provided with when it was deciding the Gerber case and a four to three sharply decided or divided decision? This court under the Erie doctrine like other federal courts has the obligation to apply a clear holding of a state's highest court on an issue of law unless there are as Judge Smith pointed out very persuasive grounds for believing that the state's highest court would no longer adhere to it. Plaintiffs have taken the position that this case is indistinguishable from Jay McDaniel. This case is very different than Jay McDaniel in some of the most important ways. First of all, Act 914 did not create any new rights. Act 604 the subsequent legislation at issue in the Jay McDaniel case created a right that never existed before. That is a huge distinction. The changes to section 205 merely clarify the language that was there. Second of all, Act 604 did not question the Essex legislature's opportunity to repeatedly and clearly criticize and disapprove of the Gerber decision. And then finally in Jay McDaniel a significant piece was that all of the arguments presented to that court had been presented and specifically contemplated by the Essex court. That's not the case here. On all three of those issues we are different. The first of which the changing of the rights as I mentioned section 205 merely clarified what was there and the General Assembly went out of its way to point out that section 205 had never been interpreted in the manner in which the Gerber court did so. Second of all, as I mentioned, Act 914 repeatedly and directly criticized Gerber. And third, the legislative history that we provide to this court was never provided to the Gerber court when it struggled to ascertain the legislative intent. Plaintiff's counsel has pointed to the Pledger case more than once. The fact of the matter is in that case the court distinguished the Skelton decision and went on to consider a clarifying amendment which is exactly what Act 914 is. Moreover, as we sit here today, as this court sits here today and tries to decide what would the Arkansas Supreme Court do if it were presented with this issue today, appellants have offered no rationale, no argument whatsoever to suggest that the court would do today what it did in Gerber. And the explanation is fairly simple. In the face of Act 914, in the face of the legislative history, it would be hard to come up with an explanation for how the In a separate issue, I know the court has not had a chance to address it yet today. Apart from the AMWA issue, the plaintiffs have suggested that they changed the customer practice or the customer practice changed under Section 203-0 of the Fair Labor Standards Act during the course of the 2012 collective bargaining negotiations. The fact of the matter is that practice never changed. And I'll discuss the merits of their argument in just a moment, but there's a plaintiffs are bound by their pleadings in this case. And in this case, in their pleadings, the plaintiffs pled more than once at all relevant times. There was a common and universal practice of not paying for donning and doffing. And in fact, the complaints, all six and seven amended complaints, disclaimed any recovery for donning and doffing time for any plaintiffs during a period of time when they were union members, not limited to the period of time when the 2008 CBA was in effect, and not terminating in 2012. Those pleadings are binding on the appellants in this case. Moreover, the plaintiffs have argued that 3-0 is an exemption, not an exclusion, therefore putting the burden of proof on the employer. Of the eight courts of appeals to consider at issue seven, have decided that 3-0 is in fact a definitional exclusion and not an exemption. We pointed you to five of those cases in our brief. We failed to point you to the 10th Circuit case in Salazar. The only court of appeals to hold differently was this Ninth Circuit back in 2003 in the Alvarez case. It is the oldest of all of these cases and no court of appeals has chosen to follow it. Moreover, all the district courts in this circuit who have had the opportunity to consider this have ruled that 3-0 is an exclusion, not an exemption. Then the appellants in their brief relied on some district court cases as well, two of them. One of them was passed by the Seventh Circuit when it got there. On that issue, there is no dispute of fact. All of the people who have testified, all the testimony provided in the record has shown very clearly that there was no agreement to move the clocks. No one from ConAgra said we are going to, excuse me, that they would pay for dining and doffing time. The agreement was only to move the clocks and nothing more. How would you apply our Jackson decision cited by plaintiffs to this case? I think the Jackson decision is perfectly in line with ConAgra's argument and the reason I say that is this. In the Jackson court, excuse me, in the Jackson case, the court was continually focused on what did the union do. There was a practice and an implied agreement in place and what did the union do in response to that? I believe the Jackson court pointed out there were 182 grievances filed while the implied in fact contract was in place. None of them related to dining and doffing. The court looked at the union's inaction and described that as acquiescence, therefore creating a customer practice under 3-0. Plaintiffs have also suggested that this lawsuit itself demonstrates non-acquiescence. The answer here is very, very simple. The plaintiffs are not the union. When it comes to 3-0, the only action that matters is what did the union do? And in this case, it is undisputed. It never filed a grievance. It never struck. It never filed a ULP. It took no action and the reason there is simple. The union's president and the business agent, the there's never an agreement to get paid to don and doff. So what action would they take to oppose the practice they consented to? Then the last issue I'd like to address you today, your honors, is the tool time issue. We have argued in our brief two different reasons as to why it's non-compensable. The first is the bus analogy. The tool checking process in Russellville is in place to keep track of inventory and protect theft, just like the rationale and bus that led the Supreme Court to decide that the activity in that case was not work. We are exactly like the Aguilar case that we cited you to where detention officers grabbed keys and handcuffs and pepper spray, uh, and radios on their way into work where the court determined that was not work, not compensable work. We are exactly like the Castaneda case where the 10th Circuit examined activities in a beef processing plant where workers would go into a locker room, change and then grab large knives and hooks and steels and then walk from the locker room to the production floor where the 10th Circuit on a panel where that included then Judge, now Justice Gorsuch, decided that activity, that minimal burden of carrying these small items does not create a non-compensable act into a compensable act. It's not work. In getting there, that panel relied heavily on the Second Circuit decision in Singh v. City of New York. It was authored by then Judge, now Justice Sotomayor, where Justice, where Judge Sotomayor focused, uh, continually on the fact that the these, these individuals were not meaningfully restricted. And this is consistent with the concurrence that she filed in the bus case where she said repeatedly that we're going to focus on work of consequence in determining whether or not an activity is work. This is not work of consequence. When you consider the bus case and the Sandifer case, even going back to the, depending upon the specific work that the employee is doing, might having that tool be an indispensable, intrinsic, not to be holding that knife. But all of these courts appoints the fact that even though in the Castaneda case, they would use knives to separate meat from bone or the hooks to hold up the, obviously activities that clearly require these tools. Carrying them is not meaningfully restrictive on the employees. It's a minimal burden. And as a result, it's not work. Then lastly, uh, this de minimis piece is an issue I'd like to touch on as well to the extent this court would determine these activities were work. The real issue in dispute seems to be the practicality of recording the time plaintiffs have suggested that there is sufficient amount of time here that it takes to do the tool checking activity. The record is undisputed. It's between two and five minutes to pick up a tool and less to take it back. Federal courts across the country generally hold that 10 minutes or less is a de minimis amount of time. So there's one issue that really is not in dispute. The record evidence here is only that, uh, employees who use it, which are the minority, uh, would grab them once or twice per week to once or twice per year. And when they do that, they are allowed to do it on the clock. And many of them do. And then this final piece is the practicality of recording the time plaintiffs have suggested that we could have supervisors review all of the knife logs and then review all of the time records to determine who was on and off the clock. There are 1000 employees, more than 1000 employees who work in this facility every day. Reviewing those time records every week would be a huge undertaking first to determine whether it was recorded correctly and then compare them to the time logs. Have plaintiffs suggested something that is possible? Yes. But that's not the standard in determining whether or not it's administratively practical to record this time. Practicality controls here, not possibility. And plaintiffs have not offered any suggestion that would be a practical way to deal with the everyday demands of industrial workforce. I'm happy to answer any other questions that the court might have. Well, getting back to the Gerber case, is it your argument that it is beyond the bounds of reason to think that the Arkansas Supreme Court might for want of a better term, dig in its heels and adhere to the Gerber decision? Is it impossible? It's not impossible. Of course not. It's not beyond the bounds of reason either. I personally can't come up with any argument as to why it should do that. The plaintiff's not offered any argument as to why it would somehow have to look at the legislative history of 205, where the initial language limited the impact of collective bargaining agreements and was rejected by the voters and then reconciled this position with the language that actually passed in 1968 that eliminated the restriction and provided total deference to the collective bargaining agreements and against the M. W. A. Thank you very much for your time, Your Honors. Thank you, Mr. Glenius. Mr. Sanford, your rebuttal. ConAgra has urged that Act 914 did not create a right, and therefore it's distinguishable from J. McDaniel. However, Act 914 does create a right. It confers a right on employers to negotiate for the nonpayment of donning and doffing, which employers could not do that prior to the passage of Act 914. ConAgra continues to insist that Gerber was wrongly decided and that the plaintiffs somehow have to convince this court to follow the Erie Doctrine. However, there's nothing that ConAgra has pointed to from the Arkansas Supreme Court, which would suggest that it has turned its back on its decision. And Act 914 confirms the reading of Gerber because during the legislative process, the legislature struck the retroactivity language and instead said going forward, effective on the date of the passage of the Act, that the law would change. That is not a reason to think that the Arkansas Supreme Court would turn its back on its decision when the Arkansas Supreme Court has said repeatedly in FedEx v. Skelton and in Pledger v. MidState Construction Company that it does not look at subsequent amendments to find out whether or not the Supreme Court was right or wrong. The Arkansas Supreme Court absolutely had legislative history at its review when it decided Gerber. It even had the pleadings of this case because both of the parties to the Gerber case cited to the Arkansas Supreme Court a prior opinion from the saying that 2030 would be read into the AMWA. And the Arkansas Supreme Court disagreed. And yet here we are again. ConAgra is asking this court to say, well, this time around they would do it. But this court doesn't speculate about rulings. It just follows binding precedent. ConAgra does say it has a lot of things that it could do to change the decision of the Arkansas Supreme Court, but that's not why we're here. We're asking the court to enforce the text of the AMWA as it existed in 2016. The text of the statute means exactly what the Arkansas Supreme Court says that it means. Thank you very much. Thank you, counsel. Court thanks both sides for your presence and the argument you provided to the court this morning, the briefing that you have submitted, and we'll take the case under advisement. Thank you.